**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| ALPHONSUS ANTHONY | |
| Plaintiff, | |
| v. | Case No. 8:18-cv-03667-CBD |
| CRESTVIEW WINE & SPIRITS, LLC, et al. | |
| Defendants. | |

## RENEWED CONSENT MOTION
## FOR APPROVAL OF SETTLEMENT

Plaintiff Alphonsus Anthony filed this action on November 19, 2018, alleging that his former employers unlawfully denied him overtime and minimum wages. *See* Compl. ¶ 1, ECF No. 1. On June 12, 2019, after discovery had ended, the parties notified the Court that they had reached a settlement. Notice of Settlement, ECF No. 28. Soon after, the parties presented the proposed settlement agreement to the Court for approval, certifying that the proposed settlement "provides [Mr. Anthony] with the maximum possible relief to which he would be entitled under the Fair Labor Standards Act." Consent Motion, ECF No. 29, at 1. But the Court declined to approve the Consent Motion, finding that the it "contain[ed] little if any information by which the Court might assess it under the factors" used to assess the reasonableness of FLSA settlements. Order, ECF No. 30, at 1.

Plaintiff now renews the Consent Motion and clarifies his contention that this Court's precedent does not require an inquiry into the reasonableness of the parties' agreement. At the same time, in case the Court disagrees with his reasoning of the precedent, Plaintiff also supplies the documentation requested in the Court's order.

**ARGUMENT**

The Consent Motion argued that "[b]ecause the settlement agreement reached in this matter provides Plaintiff with full relief under the FLSA, the analysis in *Lynn's Food Stores, Inc. v. United States* is inapposite to approval of the parties' settlement." Consent Motion, ECF No. 29, at 2 (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982)). Indeed, *Saman v. LBDP, Inc.* established a two-step framework for evaluating settlement agreements under the FLSA. *See Saman v. LBDP, Inc.*, Civ. No. A. DKC-12-1083, 2013 WL 2949047 (D. Md. June 13, 2013). If at the first step the Court finds that there the proposed resolution leaves no FLSA issues "actually in dispute," *Saman*, 2013 WL 2949047, at *3, the Court ought not inquire further into the "reasonableness" of the parties' resolution. That threshold finding also obviates the need for an independent review of the provision for attorney's fees. *See Lane v. Ko-Me, LLC*, No. CIV.A. 10-2261, 2011 WL 3880427, at *2 (D. Md. Aug. 31, 2011) (holding that where "the proposed fee award was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel."). Accordingly, the Court should find that the agreement grants Mr. Anthony full relief under the FLSA, and approve the agreement on that basis alone.

**A. Because there is no dispute as to the wages owed, the *Saman* factors are inapplicable here.**

The Court has advised the parties to address the factors set forth in *Saman v. LBDP, Inc.*, Civ. No. A. DKC-12-1083, 2013 WL 2949047 (D. Md. June 13, 2013). *See* Order, ECF No. 30, at 2. *Saman* set forth a six-factor test for determining whether a resolution of contested FLSA claims is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at

2

*3, citing *Lynn's Food Stores*, 679 F.2d at 1355. But because the parties agree on how much Mr. Anthony is owed — and because the settlement therefore leaves no FLSA issues in dispute — the Plaintiff does not read *Saman* and related precedent to require such an analysis.

The requirement of judicial approval for FLSA settlements is derived from the Supreme Court's holding in *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945). In that case, the Court held that an employee could not waive his right to liquidated damages under the FLSA when the amount of unpaid wages was undisputed. *Id.* at 706 (remarking that the legislative history of the FLSA "clearly shows that Congress did not intend that an employee should be allowed to waive his right to liquidated damages."). *See also Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352 (11th Cir. 1982) (citing *Brooklyn Sav. Bank*, 324 U.S. at 706–07 ("[T]he provisions [of the FLSA] are not subject to negotiation or bargaining between employers and employees."). Because the parties in that case agreed as to the amount of damages, *Brooklyn Savings Bank* did not resolve the question of how to assess settlements of *disputed* FLSA claims.

The Eleventh Circuit took up that question in *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982), which developed a framework for analyzing compromises of FLSA disputes. *See id.* at 1358 n.8 (internal quotations omitted) (commenting that *Brooklyn Savings Bank* "specifically left open the question whether the FLSA would permit settlement of claims between employers and employees if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement."). In that case, the employer had "repeatedly insinuated that the employees were not really entitled to any back wages" and "suggested that only malcontents would accept back wages owed them under the FLSA." *Id.* at 1354. The Department of Labor sued to have the settlement declared void. Because of the procedural and substantive unfairness of the agreement, the Court held for the De-

partment of Labor, remarking that "to approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA." *Id.* at 1350. Crucially, that case gave no guidance as to how district courts should approach a case where an employee is by all accounts fully indemnified; it only aimed to answer whether "a settlement in an employee FLSA suit . . . reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." *Id.* at 1354. *See also id.* at 1355 (remarking that judicial scrutiny is necessary to approve "*compromises* of FLSA back wage or liquidated damage claims may be allowed.") (emphasis added).

Building on that precedent, this Court has developed a two-step process for assessing FLSA settlements. *See Saman v. LBDP, Inc.*, No. CIV.A. DKC 12-1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013). In the first step, the court must "examine . . . the *bona fides* of the parties' dispute . . . to determine if there are FLSA issues that are 'actually in dispute.'" *Id.* If they are, the court must determine whether the agreement "represents a fair and reasonable resolution of a bona fide FLSA dispute." *Id.* at *1. That determination turns on an analysis of several factors, including: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel ...; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Id.* at *3 (internal quotation marks omitted). But the Court only proceeds to the second step if the first step is satisfied. *See id.* at *3.

4

In other words, the six *Saman* factors do not come into play unless there has been some "compromise of disputed issues." *Id.* at \*2 (citing *Lynn's Food Stores*, 679 F.2d at 1354). Where there are no issues in dispute, and where the employee has obtained full FLSA relief, the Court need not proceed to ask whether that result is "reasonable."[1] In such a case, the result is precisely what the FLSA mandates. *See* 29 U.S.C. § 216. To ask whether it is "reasonable" is tantamount to asking whether the statute itself is "reasonable;" that is not a proper role for an Article III court. *See South Carolina v. United States*, 907 F.3d 742, 758–59 (4th Cir. 2018) (remarking that a court must "[a]ccord[] deference to the applicable congressional command"); *id.* (commenting that "a district court is not entitled to interpose its equitable judgment" when the congressional mandate is clear).

The proposed settlement Mr. Anthony full FLSA relief. The parties have submitted to the Court a full accounting of his outstanding wage payments. *See* Calculations, ECF No. 29-1. Counsel for both sides have confirmed that Mr. Anthony's employer underpaid him by "exactly $9,340.58 in wages," a figure reached after Mr. Anthony filed a lawsuit and engaged in an adversarial and expensive process of litigation and negotiations. Consent Motion, ECF No. 29, at 1; Zelikovitz Decl., Ex. A, at ¶¶ 12–14. *Cf. Thomas v. State of La.*, 534 F.2d 613, 615 (5th Cir. 1976) ("Settlement agreements have always been a favored means of resolving disputes. . . .There is no problem of disproportionate bargaining power when a settlement gives em-

---

[1] An alternative reading of *Saman* would be at odds with the Court's institutional role. Article III limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. CONST. art. III § 2 cl. 1. Therefore, court should only exercise jurisdiction when there exists a "a concrete, living contest between adversaries." *Coleman v. Miller*, 307 U.S. 433, 460 (1939). *See also Case of Hayburn*, 2 U.S. 408 (1792) (establishing the jurisdictional requirement of adversariness). Where the parties agree on their legal rights and jointly ask the Court to dispose of a case, there no longer exists a live controversy. Any further determinations would necessarily be made "without the benefit of a truly adversarial process." Owen M. Fiss, *The History of an Idea*, 78 FORDHAM L. REV. 1273, 1278 (2009). *See also United States v. Windsor*, 570 U.S. 744, 760 (2013) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)) ("Even when Article III permits the exercise of federal jurisdiction, prudential considerations demand that the Court insist upon 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends. . . .'").

ployees everything to which they are entitled under the FLSA at the time the agreement is reached."). The proposed settlement allows Mr. Anthony to recover every cent that he is owed under the FLSA, and — as mandated by the same statute — requires his employer to pay his attorney's fees. *Id.* at 2. *See also* 29 U.S.C. § 216(b) (the employee is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damage"); *id.* (requiring an employer to pay the employee's attorney's fees).

Since Mr. Anthony has not waived his entitlement to liquidated damages, the proposed settlement is squarely in line with *Brooklyn Savings Bank.* And because the proposed resolution leaves no FLSA issues "actually in dispute," *Saman*, 2013 WL 2949047, at *3, the Court ought not inquire further into the "reasonableness" of its terms.

**B.  Applying *Saman* to this case runs contrary to the policies underlying the FLSA.**

Though the Court undoubtedly has an interest in assuring that the FLSA is administered fairly and equitably, those goals are not served by further extending *Saman* and related precedent to cases like this one. A lengthy and detailed approval process burdens the courts, practitioners, and — most importantly — the low-wage workers who may be missing meals and rent payments as they await the long overdue payment of their wages. *See Brooklyn Sav. Bank* 324 U.S. at 707 (the liquidated damages provision "constitutes a Congressional recognition that failure to pay the statutory minimum on time may be . . . detrimental to maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers"). *Cf. also Tennessee Coal, Iron & R. Co. v. Muscoda Local No.* 123, 321 U.S. 590, 597 (1944) ("We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others. Those are the

rights that Congress has specially legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner.").

A burdensome approval process also erects barriers for FLSA attorneys, for whom litigation can be unpredictable and costly. *See Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368, 377 (E.D.N.Y. 2013) ("the vast majority of FLSA cases . . . are simply too small, and the employer's finances too marginal, to have the parties take further action if the Court is not satisfied with the settlement."); Zelikovitz. Decl., Ex. A, at ¶ 3 (discussing the practical difficulties of conducting fee litigation after reaching a settlement with the opposing side). Onerous requirements for undisputed settlements would also discourage the speedy settlement of claims by introducing uncertainty into the process. As one scholar has recently observed:

> Unexpected time and costs arise when judges require settlement agreement revisions or additional filings by attorneys subsequent to the initial request for the approval of a settlement, and often these costs are not anticipated by the initial fee amount agreed to via the settlement.

Keith William Diener, *Judicial Approval of FLSA Back Wages Settlement Agreements*, 35 Hofstra Labor & Employment Law Journal 25, 64 (2017). Like many fee-shifting statutes, the FLSA aims to introduce "incentives to comply with the law, to litigate, and to settle disputes." Keith N. Hylton, *Fee Shifting and Incentives to Comply with the Law*, 46 Vand. L. Rev. 1069, 1071 (1993). An exacting and unpredictable approval process would impose additional costs on FLSA plaintiffs and their counsel and would discourage the speedy resolution of FLSA claims. Simply put, instead of protecting FLSA litigants, such requirements penalize them.

**C.  Even if the Court did apply *Saman* to this case, it should approve the agreement.**

If the Court disagrees with the parties' reading of the case law, it should still approve the

proposed settlement agreement. *Saman* held that, to approve the settlement of contested FLSA

claims, a court must assess the proposed settlement "for fairness and reasonableness" by weigh-

ing the following factors:

> (1) the extent of discovery that has taken place;
> (2) the stage of the proceedings, including the com-
> plexity, expense and likely duration of the litigation;
> (3) the absence of fraud or collusion in the settle-
> ment; (4) the experience of counsel who have repre-
> sented the plaintiffs; (5) the opinions of counsel;
> and (6) the probability of plaintiffs' success on the
> merits and the amount of the settlement in relation
> to the potential recovery.

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08–cv–

1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)) (internal alternations omitted). In

considering those factors, a court "should not make a proponent of a proposed settlement justify

each term of a settlement agreement," and "should be hesitant to substitute its own judgment for

that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)The factors should also

be considered in light of the "strong presumption in favor of finding a settlement fair." *Hoffman*

*v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010)

(quoting *Lomascolo*, 2009 WL 3094955, at *10). Here, there exists no evidence to displace that

presumption, and each of the factors support approval of the agreement proffered by the parties.

Of the *Saman* factors, the sixth is by far the most relevant here. That factor asks the Court

to consider "the amount of the settlement in relation to the potential recovery." *Id.* Mr. Anthony

is receiving exactly 100% of his potential recovery as discerned by counsel on both sides; there

could be no more reasonable resolution. And, given the "presumption that no fraud or collusion occurred between counsel," the Court should give great weight to the opinion of counsel for both sides, who jointly urge the Court to approve the agreement they have reached. *Simpson v. Pure Techs. U.S., Inc.*, No. CV PX 17-2532, 2018 WL 1851467, at *3 (D. Md. Apr. 18, 2018) (quoting *Lomascolo*, 2009 WL 3094955, at *12). *See also Lomascolo*, 2009 WL 3094955, at *12 ("A court is entitled to rely on the judgment of experienced counsel for the parties"); *Saman*, 2013 WL 2949047, at *5 (finding that counsels' "representations provide further support for the reasonableness of the Agreement."). *See also Cerritos v. 4806 Rugby Ave. LLC*, No. CV PJM 17-3760, 2018 WL 2290706, at *3 (D. Md. May 18, 2018) (finding that the undersigned plaintiff's counsel, Justin Zelikovitz, "is experienced and competent.").

The parties have reached the proposed settlement after an extensive discovery process. Discovery lasted over four months; during that period, the parties jointly propounded 168 interrogatories and 122 requests for production. Zelikovitz Decl., Ex. A, at ¶ 10.  The parties have therefore "had sufficient opportunity to to [*sic*] obtain and review evidence, to evaluate their claims and defenses, and to engage in informed arms-length settlement negotiations." *Saman*, 2013 WL 2949047, at *4 (internal quotations and citations omitted).

In light of this analysis, it is clear that, though the Court need not consider the *Saman* factors, the parties' proposed agreement presents no problem under that case.

**D.      The Court should approve fee portion of the settlement agreement.**

This Court's precedent makes clear that where "the proposed fee award was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness

of the fee to be paid to plaintiff's counsel." *Lane*, 2011 WL 3880427, at \*2 (internal quotations and citations omitted). *See also Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("[J]udicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees."). Such an inquiry is only appropriate "where the plaintiffs would receive less than the full value of their claims in a settlement." *Lane*, 2011 WL 3880427, at \*2.  But where, as here, the issue of fees was "addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). The Court should therefore approve the fee portion of the settlement without holding a separate inquest into the reasonableness of those fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").

But should the Court wish to depart from that precedent, it should nonetheless approve the settlement under its traditional fee award jurisprudence. To determine whether a fee is reasonable, "the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (citing *Grissom v. The Mills Corp.,* 549 F.3d 313, 320–21 (4th Cir. 2008)). The rates in Appendix B to this Court's Local Rules are "presumptively reasonable." *Gorham v. Regency Mgmt. Servs., LLC*, No. GJH-15-3129, 2016 WL 4705538, at \*2 (D. Md. Sept. 8, 2016). In this case, the lodestar calculation yields a total of $13,506.75.[2]

---

[2] Plaintiff's counsel has been practicing law since 2008; his colleague, Jonathan Tucker, was admitted to the bar in 2009 and has been practicing for ten years. Appendix B sets their rates at $225.00–$350.00. They were assisted in this case by a paralegal, Nicolas Wulff Gonzalez; an assistant, Julie Gutierrez Gomez; and a student associate, Tre Holloway. *See* Zelikovitz Decl., Ex. A, at ¶¶ 4–8. Appendix B sets their rates at $95.00–$150.00. *See id.*; Local Rule 109.2; Appendix B to the Local Rules.

Plaintiff's counsel has now submitted a full accounting of the hours expended by his firm on each task in this case and each expense he has incurred. *See* Billing Records, Ex. B. His firm has expended $681.75 in costs, including the filing fee, postage costs, and service costs. *Id.* Net of those costs, Plaintiff's counsel would receive $10,637.09, approximately 30% less than the lodestar calculation of $13,506.75. *See* Proposed Settlement, ECF No. 29-1, at 2. The fee is therefore reasonable under the FLSA. *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiff renews the Consent Motion and requests that the Court approve the proposed settlement agreement.

Date: September 3, 2019

Respectfully submitted,

/s/ Justin Zelikovitz
JUSTIN ZELIKOVITZ, #17567
DCWAGELAW
519 H Street NW
Washington, DC 20001
Phone: (202) 803-6083
Fax: (202) 683-6102
justin@dcwagelaw.com

*Counsel for Plaintiff*