# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| ALPHONSUS ANTHONY<br><br>　　　Plaintiff,<br><br>v.<br><br>CRESTVIEW WINE & SPIRITS, LLC, et al.<br><br>　　　Defendants. | Case No. 8:18-cv-03667-CBD |

**DECLARATION OF JUSTIN ZELIKOVITZ**

1. I am the founder and principal of DCWageLaw, the law firm that has represented Mr. Alphonsus A. Anthony from the outset of this case.

2. I founded DCWageLaw as "The Law Office of Justin Zelikovitz PLLC" in July 2013. Our office specializes in wage and hour cases like this one. Because wage and hour cases almost always present a federal question under the Fair Labor Standards Act, we file most of our lawsuits in this Court and in the United States District Court for the District of Columbia.

3. The FLSA settlement process often increases the time and expense of litigating a case, prevents parties from concluding litigation, extends the time and expense of litigation, and can undermine the delicate process of negotiations with opposing parties. Oftentimes, the parties agree on a settlement and submit a motion for approval, only to have the court require additional filings. After the parties have reached a resolution, I cannot practically reopen settlement negotiations or attempt to re-negotiate my fee; my firm must simply absorb the costs associated with post-settlement litigation.

### A.　DCWAGELAW PERSONNEL

4. I am the managing attorney at DCWageLaw. I graduated from Duke University, summa cum laude, in 2004. In 2008, I graduated from the University of Virginia School of Law. I was admitted to practice in Maryland in 2008 and in the District of Columbia in 2013. Since 2008, I have litigated approximately 250 federal and state cases as lead counsel. I was the

lead counsel on this case and was primarily responsible for case strategy and managing our team.

5. Jonathan P. Tucker, Esq. is an associate at DCWageLaw. Mr. Tucker graduated from the Georgetown University School of Law in 2009 and is a member of good standing of the Bar of the Maryland and the Bar of our U.S. District Court. Before joining DCWageLaw, Mr. Tucker was an attorney in the General Litigation Unit of the Maryland Legal Aid Bureau. In that position, he litigated dozens of cases involving employment, landlord-tenant, consumer protection, and bankruptcy issues. Since joining DCWageLaw in mid-2015, Mr. Tucker has worked on nearly every case filed by DCWageLaw, primarily in this Court and in the United States District Court for the District of Maryland.

6. Tre A. Holloway is our student associate. Mr. Holloway has just graduated from Harvard Law School, where he was a member of the Harvard Law Review. From March 2014 through June 2016, Mr. Holloway worked for DCWageLaw as a paralegal. His deep familiarity with our cases and the law that governs them, combined with his legal training at Harvard, make him an invaluable asset to our firm. He graduated in May 2019 and is awaiting his results from the D.C. bar exam.

7. Nicolas Wulff Gonzalez has been DCWageLaw's intake manager and a paralegal since August 2016. He graduated from the Florida International University in 2015 with a bachelor's degree in political science and a minor in economics. Before joining DCWageLaw, Mr. Wulff worked as a paralegal in immigration law firms in Miami. At DCWageLaw he is responsible for managing client intake, drafting pleadings and correspondence, assisting with discovery, and document management.

8. Julie Gutierrez Gomez is DCWageLaw's administrative assistant. A fluent Spanish speaker, Ms. Gutierrez Gomez performs initial intakes, collects documents from clients, and manages case files. We often ask her to create "skeleton" documents, i.e. frameworks for court documents to ensure the proper formatting and compliance with court-specific rules.

## B.   BILLING PRACTICES

9. Everyone at my firm, support staff included, records on an account-by-account basis the time we spend on a task contemporaneously, or as soon as possible after the work is performed. We record this time in increments of tenths of the hour.

10. We do not "block bill" our time. We may combine entries for one project when that project includes several tasks. For example, we aggregate the time spent researching while drafting a court filing or conferring with another attorney while drafting a submission. However, when we can realistically separate the hours invested in particular motions or other tasks, we do so.

11. We do not bill for incidental expenses such as photocopying, conference calls, and research services.

## C.  SPECIFICS OF THIS CASE

12. Mr. Anthony retained DCWageLaw on November 5, 2018. The firm accepted the case on a contingency basis and advanced all costs upfront.

13. Discovery was extensive and thorough. Together, the parties propounded 168 interrogatories and 122 requests for production. The discovery process lasted for approximately four-and-a-half months.

14. While the parties initially disagreed on the amount that was due to Mr. Anthony, they have now settled their differences. It is now undisputed that Crestview failed to pay Mr. Anthony $9,340.58. This agreement entitles him to receive exactly twice that amount, or $18,681.16.

15. Under the proposed agreement, the defendants will also pay Mr. Antony's attorney's fees separately, over and above his recovery. The agreement does not require Mr. Anthony to pay fees out of his FLSA recovery. Those fees were negotiated separately and addressed independently of the amounts that Mr. Anthony will receive. Because Mr. Anthony will obtain full FLSA relief, my firm's fees will not be paid from his recovery.

16. In other words, this settlement agreement contains no waiver of the plaintiff's statutory right to liquidated damages. If the agreement is approved, Mr. Anthony will receive full compensation under the FLSA.

17. In total, my firm has expended $13,506.75 in fees to litigate this case. That figure is calculated using an Appendix B rate of $150.00 per hour for support staff, and $350.00 per hour for the attorneys at my firm. Those figures are based on contemporaneous time records recorded by my firm using timekeeping software. I have reviewed the billing entries and have removed all entries that I found to be duplicative or unnecessary.

18. Throughout this matter, my firm expended various necessary expenses, such as service costs, filing fees, and postage costs. Exhibit B contains a complete and accurate accounting of those costs. All of those costs were necessary for the prosecution of Mr. Anthony's FLSA claims.

19. In an effort to minimize the fees incurred in this matter, my associate, Jonathan Tucker, and I assigned some of the work for this matter to a paralegal and student associate, both of whom have assisted me with many other employment law cases.

20. My firm did not bill for all the time spent on this case. Neither I nor Jonathan Tucker billed for the bulk of the time we spent conferring with each other during the course of the discovery phase or for time spent discussing this case during firm-wide case review meetings.

I SOLEMNLY AFFIRM UNDER THE PENALTY OF PERJURY THAT THE FOREGOING DECLARATION IS MADE UPON PERSONAL KNOWLEDGE AND IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

/s/Justin Zelikovitz                    September 3, 2019
Justin Zelikovitz                       Date