# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

|  |  |  |
|---|---|---|
| | ) | |
| **ALPHONSUS ANTHONY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-18-3667** |
| | ) | |
| **CRESTVIEW WINE & SPIRITS,** | ) | |
| **LLC,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Alphonsus Anthony, along with Defendants Crestview Wine Sprits, LLC,

Halishor, LLC d/b/a New Carrolton Liquors, Jaspal Singh, and Surjit Sing, (collectively

"Defendants") have submitted a Renewed Consent Motion for Approval of Settlement

("Renewed Consent Motion") that resolves Plaintiff's claims under the Fair Labor Standards Act

("FLSA"). *See* Renewed Consent Mot., ECF No. 31. Previously, this Court denied without

prejudice, the parties' Consent Motion to Approve Settlement ("Consent Motion"), ECF No. 29,

for failure to provide sufficient information which the Court could assess under the factors

identified in *Saman v. LBDP, Inc.*, Civ. No. DKC-12-1083, 2013 WL 2949047 (D. Md. June 13,

2013). ECF No. 30.

The parties agree that Defendants will pay Plaintiff a total sum of $30,000 calculated as

follows: $9,340.58 for wages, $9,340.58 in liquidated damages, and $11,318.84 in attorneys'

1

fees. Confidential Settlement Agreement and Release 2, ("Settlement Agreement"), ECF No.

29–1.[1]

The Court has reviewed the various memoranda, the Settlement Agreement, and the

applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the

reasons that follow, the Court hereby **GRANTS** the parties' Renewed Consent Motion without

modification as: (1) there exists a *bona fide* dispute; (2) the settlement agreement is both fair and

reasonable under the *Saman* test; and, (3) the agreed upon attorneys' fees appear to be not only

reasonable under *Saman*, but also represent a reduction from what Plaintiff's counsel incurred

while litigating this case. A separate Order shall issue.

I.      **DISCUSSION**

        **A. FLSA Settlement Generally**

Congress enacted the FLSA to protect workers from poor wages and long hours, which

are often the result of power imbalances between workers and employers. *Saman*, 2013 WL

2949047, at *2. The FLSA provisions are mandatory and generally are not subject to bargaining,

waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S.

697, 706 (1945). However, a court-approved settlement is an exception to the rule, so long as

the settlement reflects a reasonable compromise of disputed issues, rather than "a mere waiver of

statutory rights brought about by an employers' overreaching." *Saman*, 2013 WL 2949047, at

*2.

Although the United States Court of Appeals for the Fourth Circuit has not addressed the

factors to be considered in deciding motions for approval of FLSA settlements, district courts in

---

[1] Plaintiff alleged that Defendant owed approximately $17,000.00 in wages. Pl.'s Compl. ¶ 32, ECF No.
1. However, after discovery, the parties agreed that if Plaintiff's theory of the case were correct, Plaintiff
is owed exactly $9,340.58 in wages. Consent Mot. 1.

this circuit typically employ the considerations set forth by the United States Court of Appeals

for the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th

Cir. 1982). *Id.* at *3; *Amaya v. Young & Chang, Inc.*, No. PWG-14-749, 2014 WL 3671569, at

*2 (D. Md. July 22, 2014); *Butler v. DirectSAT USA, LLC*, No. DKC-10-2747, 2015 WL

5177757, at *2 (D. Md. Sept. 3, 2015). The settlement must reflect a fair and reasonable

resolution of a *bona fide* dispute over FLSA provisions. *Saman*, 2013 WL 2949047, at *3 (citing

*Lynn's Food*, 679 F.2d at 1355). "[A]s a first step, the *bona fides* of the parties' dispute must be

examined to determine if there are FLSA issues that are 'actually in dispute.'" *Id.* (citing *Lane v.

Ko–Me, LLC*, Civ. A. No. DKC–10–2261, 2011 WL 3880427, at *2 (D. Md. Aug. 31, 2011))

(citation omitted). Then as a second step, the terms of the proposed settlement must be assessed

for fairness and reasonableness. *Id.*

### B. *Bona Fide* Dispute

Counsel contend that a *bona fide* dispute no longer exists because "the parties agree on

how much Mr. Anthony is owed." Renewed Consent Mot. 3. Further, counsel contends that

because there is no longer a *bona fide* dispute, an assessment for fairness and reasonableness of

the Settlement Agreement is not required. *Id.* at 2–3. The Court disagrees.

"In deciding whether a *bona fide* dispute exists as to defendant's liability under the

FLSA, courts consider the pleadings in the case, along with the representations and recitals in the

proposed settlement agreement." *Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 408 (D. Md.

2014) (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at

*16–17 (E.D. Va. Sept. 28, 2009)). "A *bona fide* dispute is one in which there is some doubt

whether the plaintiff would succeed on the merits at trial." *Kirkpatrick v. Cardinal Innovations

Healthcare Solutions*, 352 F. Supp. 3d 499, 502 (M.D.N.C. 2018) (citing *Hall v. Higher One*

*Machs., Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at \*6 (E.D.N.C. Sept. 26, 2016)). "A *bona fide* dispute exists when an employee makes a claim that he or she is entitled to overtime payment." *Lomascolo*, 2009 WL 3094955, at \*16 (holding that a *bona fide* dispute existed because the complaint alleges a dispute over the amount due and the defendants deny those factual averments).

Prior to settling this matter, Plaintiff alleged that Defendants: (1) failed to pay Plaintiff overtime pay for hours worked over forty; and (2) failed to pay Plaintiff the applicable minimum wage during Plaintiff's first month of employment. Compl. ¶¶ 50, 57–58, 66, ECF No. 1. Defendants each filed an Answer, denying the allegations. *See* Answers by Defendants, ECF No. 10–13. Even in the Settlement Agreement, Defendants steadfastly deny liability. Confidential Settlement Agreement and Release, 2, ECF No. 29–1. It is clear when reviewing the pleadings and the Settlement Agreement, there is doubt whether Plaintiff would have succeeded on the merits at trial. Therefore, although the parties have reached an agreement to end the litigation, they remain at odds with one another regarding Defendants' liability. *See Butler*, 2015 WL 5177757, at \*3 (holding that there was a *bona fide* dispute because at the time of settlement, the plaintiff continued to assert the defendants' liability, and the defendants had not admitted liability).

Further, the parties engaged in extensive discovery lasting over four months, which included 168 interrogatories and 122 requests for production of documents. Renewed Consent Mot. 9; *See Kirkpatrick*, 352 F. Supp. 3d at 502 (holding that there was a *bona fide* dispute between the parties because the parties engaged in extensive discovery and because there were serious questions of fact and law at issue). Accordingly, the Court finds that a *bona fide* dispute exists in this case.

## C. Fairness and Reasonableness

In order to assess the fairness and reasonableness, the court is required to weigh the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel ...; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)). "There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Lomascolo*, 2009 WL 3094955, at *10.

### 1. Extent of discovery

According to the Renewed Consent Motion, the parties settled only after an extensive discovery process. Renewed Consent Mot. 9. Discovery lasted over four months, and the "parties jointly propounded 168 interrogatories and 122 requests for production." *Id.* With extensive discovery, the Court agrees that the parties "had sufficient opportunity to obtain and review evidence, to evaluate their claims and defenses, and to engage in informed arms-length settlement negotiations." *Id.*

### 2. Stage of the Proceedings

This settlement comes close to one year after the case was filed with the Court. In that time, the parties exchanged a significant amount of discovery and had an opportunity to engage in settlement negotiations with one another. *Id.* While the matter settled before trial or even summary judgment motions were filed, it seems apparent that written discovery was completed.

*Id.* Following the written discovery, the parties came to an agreement as to the amount Defendants owed Plaintiff and agreed to settle. *See* Consent Mot. 1. Therefore, it is unlikely further discovery would have made a difference at this stage of the proceedings.

### 3. Absence of Fraud or Collusion

There is no evidence that the Settlement Agreement is the product of fraud or collusion. "There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Saman*, 2013 WL 2949047, at *5. In this case, both parties are represented by experienced counsel, who jointly urge the Court to approve the Settlement Agreement they reached. Accordingly, no fraud or collusion appears present in this matter.

### 4. Experience of Counsel

Plaintiff is represented by Justin Zelikovitz. Declaration of Justin Zelikovitz ("Zelikovitz Declaration") ¶¶ 1–2, ECF No. 31–1. Mr. Zelikovitz has approximately eleven (11) years of experience as an attorney. Zelikovitz Decl. ¶ 4. He has been a member of the Maryland Bar since December 12, 2008. *See* https://mdcourts.gov/lawyers/ attylist (Last visited Sep. 23, 2019). In his declaration, Mr. Zelikovitz discusses his firm and its specialty in wage and hour cases. Zelikovitz Decl. ¶ 2. His office regularly files their cases in this Court and the United States District Court for the District of Columbia, reflecting Mr. Zelikovitz's familiarity with this district's application of the FLSA. *Id*. at ¶ 2. Mr. Zelikovitz bills at $350.00 per hour. DCWageLaw Invoice, ECF No. 31–2. Given Mr. Zelikovitz's active participation in this matter and the extent of his experience—as supported by the nature of his firm's specialization in wage and hour cases—Plaintiff's counsel has sufficient experience in this area of law to competently represent Plaintiff.

### 5. Opinions of Counsel

Counsel for both parties agree that this settlement is in their clients' best interest.  The Renewed Consent Motion discusses in detail, Plaintiff's recovery, which is "100% of his potential recovery as discerned by counsel on both sides."  Renewed Consent Mot. 8.  It is clear both parties are satisfied with the Settlement Agreement and believe this is a reasonable and fair settlement.

### 6. Probability of Plaintiff's Success on the Merits and the Amount of the Settlement in Relation to the Potential Recovery

According to the Consent Motion, the maximum recovery for Plaintiff is $18,681.16.  Consent Mot. 1–2, ECF No. 29.  This includes: $9,340.58 in wages and $9,340.58 in liquidated damages.  *Id.*  Further, counsel unambiguously state that Plaintiff will "actually receive" $18,681.16 since Defendants will pay Plaintiff counsel's attorneys' fees and costs "as a separately negotiated amount over and above what Plaintiffs [sic] will receive."  *Id.*  Accordingly, given that the parties agree on Plaintiff's theory of the case, and the amount owed, Plaintiff could not have recovered more at trial.  Plaintiff received the amount he sought and an equal amount in liquidated damages set forth in Section 216(b) in the FLSA.  29 U.S.C. 216(b).  Had they gone to trial, Plaintiff ran the risk of recovering less.  *Id.*  The unpredictability of the outcome at trial makes settlement an ideal option for both parties.

### D.  Attorneys' Fees

An award of attorneys' fees to Plaintiff will require an application of the traditional lodestar methodology factors.  *Saman*, 2013 WL 2949047, at *6.  The starting point in the lodestar calculation is multiplying the number of hours reasonably expended by a reasonable hourly rate.  *Id.* (citing *Robinson v. Equifax Info. Servs, LLC*, 560 F.3d 235, 243 (4th Cir. 2009)).  Further, the specific facts of the case are to be considered in calculating a reasonable figure.  *Id.*

7

The United States Court of Appeals for the Fourth Circuit has instructed district courts to

consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of
> the questions raised; (3) the skill required to properly perform the
> legal services rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee for like work;
> (6) the attorney's expectations at the outset of the litigation; (7) the
> time limitations imposed by the client or circumstances; (8) the
> amount in controversy and the results obtained; (9) the experience,
> reputation and ability of the attorney; (10) the undesirability of the
> case within the legal community in which the suit arose; (11) the
> nature and length of the professional relationship between attorney
> and client; and (12) attorneys' fees awards in similar cases.

*Id*. at *6–7 (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). When a

claim for attorneys' fees is filed in the federal court in Maryland, there is an extra layer of

complexity arising from the Court's Local Rules which includes an entire appendix listing

"Rules and Guidelines" for how parties are to request reimbursement of fees. Local Rules, App.

B (D. Md. July 1, 2016).

Plaintiff contends that the Court should approve the attorneys' fee portion of the

settlement without holding a separate inquest into the reasonableness of the fees because the fees

were "addressed independently and seriatim," and therefore, "there is no reason to assume that

the lawyer's fee has influenced the reasonableness of the parties' settlement." Renewed Consent

Mot. 9–10. On page ten of the Renewed Consent Motion, Plaintiff cites to a case in this district,

summarizing law adopted in the United States District Court for the Middle District of Florida:

> If the motion demonstrates that a proposed fee award was "agreed upon separately
> and without regard to the amount paid to the Plaintiff, then unless . . . there is
> reason to believe that the Plaintiff's recovery was somehow adversely affected by
> the amount of fees to be paid to the attorney, the Court will approve the settlement
> without separately considering the reasonableness of the fee to be paid to
> Plaintiff's counsel."

*Lane v. Ko-Me, LLC*, No. 10-2261, 2011 WL 3880427, at *2 (D. Md. Aug. 31, 2011) (citing

*Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)).  However, careful

reading of the case makes it clear that the Court therein did not actually adopt the Florida rule.

In fact, the *Lane* decision cites to Section 216(b) of the FLSA as requiring a court to allow

"reasonable" attorneys' fees to be paid when a judgment has been entered.  *Id.*  This Court went

on to reason that "[i]t would make little sense to require the amount of the fees awarded to be

reasonable where the plaintiffs prevail on the merits, but to abandon that requirement altogether

where the parties agree to settle the case."  *Id.*  Further, this Court unambiguously stated,

"[a]ccordingly, the reasonableness of the fee award proposed in an FLSA agreement must be

independently assessed regardless of whether there is any suggestion that a 'conflict of interest

taints the amount the wronged employee recovers under a settlement agreement.'"  *Id.* at 3

(citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1243 (M.D.Fla. 2010)).  Therefore, a

separate reasonableness assessment must be conducted.

While the Renewed Consent Motion does not explicitly address the *Saman* factors, the

filing contains sufficient information to make an independent assessment possible.  Those factors

that appear to be significant to the determination of reasonableness in this case are addressed

below.  The remaining factors—while the information exists in the filing—present no novel

issues or significant impact on the reasonableness of the attorneys' fees requested.[2]  Ultimately,

---

[2] The *Saman* factors that are not addressed in detail in this memorandum are:

> (3) the skill required to properly perform the legal services rendered; (4)
> the attorney's opportunity costs in pressing the instant litigation; . . . (6)
> the attorney's expectations at the outset of the litigation; (7) the time
> limitations imposed by the client or circumstances; . . . (10) the
> undesirability of the case within the legal community in which the suit
> arose; (11) the nature and length of the professional relationship between
> attorney and client . . . .

*Saman*, 2013 WL 2949047, at *3.

the requested amount of reimbursement of attorneys' fees is reasonable, and accordingly, this Settlement Agreement should be approved.

## 1. (1) The Time and Labor Expended

Plaintiff's counsel included a declaration detailing his qualifications and summarizing the work completed for the case. Zelikovitz Decl. ¶ 1–20. Plaintiff's counsel also included a detailed time log of the hours billed and the tasks completed. *See* DCWageLaw Invoice, ECF No. 31–2. This log does not comply with the Local Rules requiring that submissions supporting the hours billed are to be divided into general categories corresponding with various stages of litigation. Local Rules, App. B (D. Md. July 1, 2016). However, the time entries adequately support Plaintiff's request for fees.

According to Mr. Zelikovitz, his firm spent 49.5 hours and expended $13,506.75 in fees and expenses to litigate the case. Zelikovitz Decl. ¶ 17; DCWageLaw Invoice, ECF No. 31–2.[3] The fee was calculated by using the rates of: $150.00 per hour for support staff, and $350.00 per hour for attorneys at the firm. *Id.* Given that both Mr. Zelikovitz and Mr. Tucker have been admitted to the bar for over nine (9) years, their $350.00 hourly rate is consistent with the rates set forth in Appendix B of the Local Rules, and are therefore, reasonable.

### i. Clerical Work

Generally, administrative or secretarial work should not be compensated as an award for attorneys' fees. *Kabore v. Anchor Staffing, Inc.*, No. L-10-3204, 2012 WL 5077636, at *4 (D. Md. Oct. 17, 2012) (citing *In re Beenblossom*, BK 10-40335-TJM, WL 2710417, at *4 (Bankr.

---

[3] In addition to Mr. Zelikovitz, Jonathan P. Tucker worked on the case. Zelikovitz Decl. ¶ 19. Jonathan P. Tucker, Esq. is an associate at DCWageLaw. *Id.* at ¶ 5. He graduated from Georgetown University School of Law in 2009. *Id.* He has "litigated dozens of cases involving employment law." *Id.* Mr. Tucker has been a member of the Maryland Bar since December 17, 2009. *See* Maryland Attorney Listing, https://mdcourts.gov/lawyers/ attylist (last visited Sep. 23, 2019).

D. Neb. July 7, 2010)) (concluding that activities such as "file setup, scanning, setting up

appointments" are clerical and, therefore not billable). "Fees for work performed by paralegals

are generally recoverable, but only to the extent that they reflect tasks traditionally performed by

an attorney and for which the attorney would customarily charge the client." *Id.* (citing *Hyatt v.*

*Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002)). Where a description is ambiguous as to whether

the task is clerical or legal in nature, courts have declined to award fees for those hours. *Kabore*,

2012 WL 5077636, at \*4 (declining to award fees for hours spent "prepar[ing] for mailing to 425

opt-ins" as it was "not immediately apparent what this 'preparation' entailed").

      In this case, Plaintiff's counsel seeks to recover attorneys' fees for work completed by

support staff at a lower rate. Zelikovitz Decl. ¶ 4–8. Several of the time entries by support staff,

the Court finds are clerical in nature. For instance: 11/06/2018 – "Create electronic folder &

physical folder, scan and save all of client's documents" – $225.00; 02/20/2019 – "File

organization" – $15.00; 02/22/2019 – "Transfer case to Mycase" – $30.00; 04/12/2019 –

"Upload settlement negotiations email" – $15.00; 05/20/2019 – "Scan and upload First Set of

Requests from Ds (8 packages)." DCWageLaw Invoice, ECF No. 31–2. The Court finds that

these tasks are not traditionally performed by attorneys, and therefore, should not be

compensated as an award for attorneys' fees. Accordingly, $285.00 should be reduced from the

invoice.

      Plaintiff's counsel also seeks to recover fees for a time entry by attorney Jonathan

Tucker: 02/22/2019 – Create new MyCase files – $70.00. *Id.* Hours billed by an attorney

completing clerical work would not be recoverable even if they were billed at a lower paralegal

rate. *Kreuze v. VCA Animal Hosps.*, No. PJM-17-1169, 2019 WL 2107263, at \*7 (D. Md. May

14, 2019). The creation of a case file, is inherently clerical, which would not be "traditionally

performed by an attorney." *See In re Beenblossom*, WL 2710417, at *4. The fact that Mr.

Tucker is an attorney, does not by itself support the argument that the time entry for creating a

casefile was a task "traditionally performed by an attorney." Accordingly, $70.00 should be

reduced from the invoice.

Aside from the aforementioned time entries, a review of the time expended upon the

tasks completed by Mr. Tucker and Mr. Zelikovitz appear to be reasonable. Plaintiff's counsel

made an effort to minimize fees incurred for this matter by delegating non-clerical work to

paralegals who bill at a lesser rate than he does. *Id.* at ¶ 19. Further, Plaintiff's counsel

exercised billing judgment for not billing time spent conferring with associates in the firm

regarding the case. *Id.* at ¶ 20.

Ultimately, the reduction of $355.00[4] does not affect the parties' award for attorneys'

fees because Plaintiff's counsel agreed to a fee award of $11,318.84, which is over $2,000.00

less than the $13,506.75 his firm expended in litigating this case. Consent Mot. 1; *See*

DCWageLaw Invoice, ECF No. 31–2.

### 2. (2) The Novelty and Difficulty of the Questions Raised

As discussed above, it is apparent that at the outset of litigation there were factual

disagreements regarding the hours Plaintiff worked and the pay he received. However, this

appears to be a typical wage and hour claim alleging an employer failed to properly compensate

employees the minimum wage and for overtime, by using a flat rate of pay. While this case may

not have been novel, the parties did participate in extensive discovery. Further, counsel quite

ably, worked together to confirm Plaintiff's theory of calculating wages owed, and negotiated a

settlement amount in accordance to this theory.

---

[4] The sum of the amount reduced for support staff time entries of $285.00 and the amount reduced for
Jonathan Tucker's time entry of $70.00.

### 3. (5) The Customary Fee for Like Work

An additional factor considered by the Court is the customary fee attorneys charge for the type of work which a fee award is sought.  For the convenience of counsel, the Local Rules include guidelines listing a presumptive range of reasonable hourly rates.  *Gonzales v. Caron*, Civ. A. No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this Court presumes that a rate is reasonable if it falls within these ranges.").

Plaintiff's counsel is seeking to recover fees based on hourly rates that vary depending on the experience of those who worked on the case.  Zelikovitz Decl. ¶ 17.  Plaintiff's counsel did not supply affidavits or declarations from experienced attorneys outside of their firm who could attest to whether the rates charged by Plaintiff's counsel are customary for this work.  However, as stated above, the rates requested are within the Guidelines set forth in Appendix B of the Local Rules, therefore, are presumptively reasonable.

### 4. (8) The Amount in Controversy and The Results Obtained

According to the Consent Motion, Plaintiff originally estimated that he was owed $17,000 in overtime wages.  Consent Mot. 1.  However, after discovery, the parties jointly confirmed that should Plaintiff's theory of the case be correct, Plaintiff would be owed exactly $9,340.58 in wages.  *Id.*  With this settlement, both parties have agreed that Defendants will pay Plaintiff $18,681.16.  *Id.* at 2.  This amount includes the $9,340.58 in back wages and an equal amount of $9,340.58 for liquidated damages under Section 216(b) of the FLSA.  29 U.S.C. § 216(b).  Accordingly, Plaintiff will receive the maximum he would have been entitled under his theory of the case.  The unpredictability of the outcome at trial makes settlement an ideal option for both parties.

## 5. (9) The Experience, Reputation and Ability of the Attorney

As detailed above, Plaintiff's counsel has significant familiarity with wage and hour claims. Mr. Zelikovitz has approximately eleven (11) years of experience practicing law, a majority of which dealt with wage and hour cases similar to this one. Zelikovitz Decl. ¶ 4. Accordingly, the Court finds that Mr. Zelikovitz's experience and reputation provided Plaintiff with adequate representation.

## 6. (12) Attorneys' Fees Awards in Similar Cases

The parties jointly agree that Plaintiff's counsel will receive $11,318.84 in attorney's fees. Counsel has not provided any examples of attorneys' fees awards in similar cases, but a review of a few cases reveals this is a reasonable amount to recover. *See, e.g.*, *Navarro v. Eternal Trendz Customs, LLC*, Civ. A. No. TDC-14-2876, 2015 WL 898196 (D. Md. Mar. 2, 2015) (approving a settlement which included attorneys' fees and costs amounting to $3,545.20 where plaintiffs were awarded $4,291.49 and $1,298.89 in wages and liquidated damages); *Duprey*, 30 F. Supp. 3d 404 (approving a settlement that was agreed to after informal discovery and ADR and that included $3,000 in attorneys' fees and costs where plaintiff was awarded $4,500 in wages and liquidated damages); *Almendarez v. J.T.T. Enterprises Corp.*, Civ. No. JKS-06-68, 2010 WL 3385362 (D. Md. Aug. 25, 2010) (granting attorneys' fees 25 times the total amount eight plaintiffs recovered after trial). Accordingly, the Court finds the ratio between what Plaintiff will recover and what Plaintiff's counsel will be reimbursed is in line with other similar cases.

**II.      Conclusion**

Based on the foregoing, the Court hereby **GRANTS** the parties' Renewed Consent

Motion without modification as: (1) there exists a *bona fide* dispute; (2) the settlement agreement

is both fair and reasonable under the *Saman* test; and, (3) the attorneys' fees agreed to appear to

be reasonable under *Saman.*

September 24, 2019                                                                    /s/

                                                                          Charles B. Day
                                                                          United States Magistrate Judge

CBD/hjd